**Opinion issued August 26, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01042-CR

_____

**GBOWEH DICKSON GEORGE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 176th District Court
Harris County, Texas
Trial Court Case No. 1302726

---

# O P I N I O N

A jury found appellant, Gboweh Dickson George, guilty of the offense of murder[1] and assessed his punishment at confinement for seventy-five years. In six

---

[1] *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2011).

issues, appellant contends that he received ineffective assistance of counsel and the trial court erred in not conducting an informal inquiry into his competency to stand trial, excluding him from the courtroom during trial, not instructing the jury to disregard his absence from trial, denying his motion for mistrial, and admitting certain photographs into evidence.

We affirm.

## Background

Jaleah "Juju" Carter testified that on the night of April 12, 2011, appellant, who was her neighbor at an apartment complex, came to her door with a police officer and accused her of having been involved in burglarizing his car. After Carter denied any involvement, appellant and the officer left. Shortly thereafter, Carter and Justin Chenier, while sitting outside on the steps of the apartment building, saw appellant "pacing" near his car. Minutes later, appellant drove his car up to Carter with his window down. After Carter and Justin saw that he was holding a shotgun, they ran into Carter's apartment, closed the door, and turned off the lights. As appellant began shooting through the door, walls, and windows of the apartment, Carter and Justin tried to move children, who had been sleeping on the living room floor, to the back of the apartment. After firing several rounds, appellant left.

2

Carter and Justin then saw that appellant had shot the complainant, an eleven-year-old boy, in the head. He died at the scene. Appellant also shot the complainant's nine-year-old brother in the knee and torso, and he shot Carter in the wrist and thigh.

The trial court admitted into evidence appellant's statement to law enforcement. In his statement, appellant asserted that he had fired his weapon because he saw Chenier "flash a weapon" or "some kind of steel object." And he kept firing into the apartment because someone inside the apartment had "flashed . . . a weapon or something" through a bedroom window.

At a pretrial hearing, conducted three weeks before trial,[2] appellant, while the State was reciting the facts of the case, interrupted as follows:

| | |
|---|---|
| [The State]: | Just as a point of a fact, Judge, they did search the domicile. So, even—we don't contend that that would be a basis for a motion to dismiss; but there was—did— |
| [Appellant]: | You're lying. |
| [The State]: | —make entry and did recover multiple projectiles and evidence within the— |
| [Appellant]: | You're lying. |
| THE COURT: | I beg your pardon? I beg your pardon? |
| [Appellant]: | She's lying. |
| THE COURT: | Well, I guess that will come out at trial, won't it; but we're not trying the case here today. |

_____

[2] This hearing took place before the Honorable Shawna L. Reagin.

The trial court noted that although it had previously granted defense counsel's motion for appellant to undergo a competency evaluation, an examination had not been conducted. Defense counsel explained that she had moved for an evaluation "in an abundance of caution" after appellant had made a "disturbing" remark to his mother regarding the prosecutor.[3] However, appellant had since informed counsel that his comment was a joke and he "didn't mean it." The trial court then asked appellant whether he wished to be examined for competency or if it needed to take action regarding any mental health issues. Appellant responded, "No. I'm competent."

Later during the hearing, appellant, while the State was reciting certain facts of the case, again interrupted and accused the prosecutor of "lying." The trial court instructed appellant to "be quiet," and it admonished him, "Now, listen to me. When we have this trial, I'm not going to be having any of these outbursts. You've got to behave appropriately during this trial." And appellant responded, "Yes, ma'am." The trial court further cautioned appellant, "[Y]ou don't help yourself at all when you start shouting things out or acting out of control." And appellant responded, "I understand."

At trial, appellant sat through voir dire without incident. On the second day of trial, when Carter testified that she first met appellant when she saw him

---

[3]     The substance of the remark is not in the record.

4

walking down an apartment-complex sidewalk and asked him for a cigarette, appellant interrupted with, "I don't smoke cigarettes. Stop lying." The trial court admonished appellant that he could not testify unless he later chose to take the stand. Later, the following discussion took place:

| | |
|---|---|
| [The State]: | . . . where on here is [appellant's] apartment? |
| [Carter]: | It's either up here or up here. I don't know which one it is, but I know it's on the second floor. |

. . . .

| | |
|---|---|
| [Def. Counsel]: | Your Honor, may we approach? |
| [Appellant]: | You just said you knew where I lived. You just said it. |
| THE COURT: | [Appellant]—remove the jury please. |

(Jury leaving courtroom.)

| | |
|---|---|
| [Appellant]: | You just said you knew where I lived. You just said it. You just said it. Stop lying. You just said it. |
| THE COURT: | [Appellant], settle down. You be quiet, [appellant]. Settle down right now. |

(Jury out.)

| | |
|---|---|
| THE COURT: | Now, [appellant], we had this conversation. If you continue to disrupt this trial, two things you are doing as a disservice to yourself. One is, if you keep it up, the first thing is I will have to remove you from this courtroom. That means that you would not be able to consult with your attorney, who is [sic] her obligation to cross-examine folks. You understand? She gets to ask the questions, not you. |
| | If you disrupt this courtroom one more time, then I may have to ask you to—the bailiff to remove you from the courtroom, continue this trial. I do not |

want to do that. I think that is to your detriment. That hurts your case.

The second thing is, the more you disrupt in front of this jury, the more you taint the jury. By that I mean is, they're looking at you thinking maybe you might be a violent person. Do you understand?

(No response.)

THE COURT: Answer my question, [appellant]. Do you understand?

[Appellant]: (Nods head.)

THE COURT: All right. Now, can I have your promise that you will not disrupt this trial again?

[Appellant]: Yes. Sorry, your Honor.

THE COURT: Thank you, [appellant]. I appreciate that. And let's try to—you try to assist your attorney in the representation of you in this trial by not speaking out. You will have an opportunity if you so desire to testify, and your lawyer will have the opportunity to cross-examine these witnesses. All right. I have your promise, so let's start again.

After the jury returned and the State continued its examination of Carter, defense counsel, in a discussion at the bench, requested a recess to talk with appellant because she had noted that he was becoming "extremely agitated." The State also noted that appellant was "twisting and grating his hands." The trial court granted a recess for defense counsel to consult with appellant in the holdover cell.

After the recess, but before the jury returned to the courtroom, the trial court asked counsel to inform it of any disruptiveness by appellant prior to trial. The State explained that appellant, as noted above, had interrupted the pretrial hearing,

6

received a lengthy admonishment from the trial court, and agreed not to be disruptive during trial. Defense counsel then requested, and the trial court granted, additional time for her to consult with appellant.

Subsequently, while the jury was still out, the trial court announced that the bailiff had informed it that appellant had refused to come out of the holdover cell. Appellant was then brought before the trial court, and the following exchange took place:

THE COURT: [Appellant], from the outset I have been trying to explain to you what your conduct can do to poison this jury in determinig not from the evidence that's been presented of your guilt, but because of your actions. You have—I've understood a prior record of a pre-trial conference, that you disrupted that. You have been disrupting this trial by shouting out loud, glaring at the witness, and otherwise totally disrupting this trial to the point where I'd have to remove the jury.

I indicated to you earlier, and I still mean it, [appellant], I'm very concerned for your representation. I'm totally and—concerned with regard to what this jury might do watching you[] disrupting this proceeding. In other words, I'm very concerned that they might ignore the evidence in the case and find you guilty based upon your disrupting this trial. You see what I'm saying? Can you hear me, [appellant]?

(No response.)

THE COURT: You gave me your promise the last time that I removed the jury that you could remain quiet and assist your attorney in representing you. You gave me your promise, [appellant]. Do you understand?

7

(No response.)

THE COURT: [Appellant], I need for you to answer me. I have done nothing but respect you and I expect you to do the same for me.

(No response.)

THE COURT: Answer my question. Can you hear me, [appellant]?

(No response.)

THE COURT: Let the record reflect that [appellant] has got his head down, he is handcuffed, he is shaking, he is mumbling, but he is not answering the Court.

[Def. Counsel]: *Your Honor, if I may. At this point in time, looking at [appellant's] demeanor, his inability to communicate with me, his inability to communicate with the Court, I would ask for a competency hearing to see if he is competent enough to continue with the trial and in capacity.*

THE COURT: *That's denied. That's denied. I don't have any— any evidence whatsoever other than him acting out in this trial about whether or not he is competent to assist you in this trial.*

*[Appellant], I am trying to do everything in this Court's power to allow you to sit at [the] counsel table and assist your attorney. And I have watched him assisting you throughout this trial. How much that was, I don't know, and I don't really want to get into it, but I have no evidence from any source whatsoever except him acting out whether or not he is competent.*

[Appellant], I'm going to ask you one more time, sir, please help me help yourself. Can you sit there and not disrupt and shout out at these witnesses and behave yourself? Can you do that? Can you help me help you?

(No response.)

THE COURT: Let the record reflect that [appellant] refuses to answer my question. Let the record reflect further since I have no confidence whatsoever that when we restart this trial that [appellant] will not continually disrupt the trial by shouting out to the witnesses in an aggressive and loud manner, now I'm going to remove him from this trial. Your objection, please.

[Def. Counsel]: Yes. I would object under the confrontation clause, your Honor. Also under 33.03 of the Code of Criminal Procedure, and also under his Fifth Amendment right to testify, because he was planning on testifying at this trial, and his removal, of course, would make that difficult if not impossible.

THE COURT: Very well. I understand your objections, and they're duly noted for the record. . . .

. . . .

Now, [appellant], I know you can hear me. Here's the situation, I'm going to have to order that you are removed from this courtroom to sit in the holdover cell. At any time that you wish to come back into this courtroom to sit by your attorney and assist your attorney in the representation of you in this murder trial, we will be happy to have you back. Do you have anything to say at this time, [appellant]?

(No response.)

. . . .

[Def. Counsel]: *Your Honor, at this point I would ask for a mistrial. I think he has tainted the jury to this point in time that they will be making a decision based on his conduct as opposed to making a decision based on the evidence.*

THE COURT: *Well, that's a concern of mine also, but your motion is denied at this time.* Very well. One last time, [appellant] can you give me your assurances

9

|  |  |
|---|---|
|  | that you will not disrupt this trial and [will] assist your attorney? |
| (No response.) | |
| THE COURT: | Very well.  Let the record reflect that [appellant] is refusing to answer my question.  Remove him from the courtroom.  Thank you. |
| [Def. counsel]: | *And your Honor, if I may, when the jury is seated, if you would give them an instruction or an admonishment if possible to try to cure the taint at this point in time.* |
| THE COURT: | Are you sure you want me to do that and call attention to it? I don't care. It's what you want to do. |
| [Def. counsel]: | Yes, please. |
| THE COURT: | All right. |
| (Defendant exits the courtroom.) | |
| THE COURT: | *I tell you what, . . . I decided not to do that.* |
| [Def. counsel]: | *Well, . . . perhaps what would be best is an instruction to not consider his absence from the trial.* |
| THE COURT: | *I don't think so.* |
| [Def. counsel]: | Okay. |

(Emphasis added.)

The bailiff then placed appellant in a holdover cell where he could hear the proceedings through an audio system.  The trial court instructed the bailiff to ask appellant every thirty minutes to an hour whether he wished to come back into the courtroom and discuss with the trial court whether he could conduct himself appropriately.  The jury then returned, and the trial continued.

Later in the afternoon, defense counsel, outside the jury's presence, advised the trial court that she had attempted to speak with appellant during a break, but he would not respond when she asked whether he wanted to return to the courtroom. After another break, defense counsel notified the trial court that she had spoken with appellant, who had indicated that he did not wish to participate in the trial, talk to her, or "talk about the case or the situation."

The next morning, before proceedings resumed in front of the jury, appellant told the trial court that he wished to participate in the trial. The trial court twice asked appellant whether he could refrain from disrupting the proceedings. After appellant refused to answer, the trial court sent him to the holdover cell, and the trial continued. Later that day, appellant was again brought before the trial court and asked whether he wished to participate. The trial court cautioned appellant against missing the trial, but explained that it could not allow him to disrupt the proceedings. Again, appellant refused to answer. The trial court announced that it had no choice but to send appellant back to the holdover cell where he could listen to the trial.

Defense counsel then advised the trial court that she had been unable to communicate with appellant since the previous day, and he had not responded to her questions concerning the evidence or whether he still planned to testify. Counsel stated that she wished to "renew the competency issue." The trial court

asked whether there was any evidence of appellant's incompetency other than his "simply refusing to answer" her or the trial court. After defense counsel responded in the negative, the trial court denied her request.

After the State rested, the trial court, outside the presence of the jury, asked defense counsel to consult with appellant to determine whether he wished to testify. The trial court noted on the record that appellant, after being brought before the trial court, "once again made outbursts" before it could ask him any questions. The trial court then announced that it was "not confident that [appellant] would [] refrain from interrupting the orderly process of this trial." And the State observed that it was apparent that appellant had been listening to the proceedings because his outbursts related to the matters raised in the courtroom. The State asserted, thus, it was apparent that appellant had "been able to perceive what has been going on out here." The defense then rested.

The next day, after the jury found appellant guilty, but prior to the commencement of the punishment phase, the trial court asked appellant whether he wished to participate. Appellant answered, "Yes, I wish to participate." And he indicated that he wished to testify. During his testimony, appellant offered numerous non-responsive answers and answered beyond the questions asked. At the close of questioning, appellant refused to step down and continued to speak. After removing the jury from the courtroom, the trial court asked appellant whether

he would be quiet during the remainder of the proceeding, and appellant agreed. Defense counsel then moved for a mistrial, asserting that the jury had been tainted by appellant's conduct, which the trial court denied.

During the State's closing at punishment, appellant continued to interrupt, accusing Carter of being affiliated with a gang. After again removing the jury, the trial court stated,

> Let the record reflect that [appellant] had to be forcibly removed from the courtroom, in the presence of the jury, after repeated admonishments. While this Court has attempted to protect [appellant's] rights from the onset of this trial, it is obvious to the Court that he cannot conduct himself in a manner that will not interrupt the orderly process of the punishment phase, and this Court cannot place anyone that is within this courtroom in danger, including the officers, so therefore I'm not going to permit him to be back out here until he is sentenced.

After the jury assessed punishment, the trial court released the jury, had appellant brought out, and sentenced him.

## Competency

In his first issue, appellant argues that the trial erred in not making an informal inquiry into his competency to stand trial and not further ordering a formal competency examination because he engaged in frequent outbursts, before and during trial, and refused to communicate with his attorney and the trial court.

We review challenges to the adequacy of a trial court's informal competency inquiry, and its finding following an informal competency inquiry, for an abuse of

13

discretion. *See Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008); *Thomas v. State*, 312 S.W.3d 732, 736–37 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

"A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). "'[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be subjected to trial.'" *Id.* at 688–89 (quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975)). Thus, a defendant is incompetent to stand trial if he does not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). Upon suggestion that a defendant may be incompetent, a trial court shall determine by "informal inquiry" whether there is "some evidence" from any source that would support a finding that the defendant may be incompetent to stand trial. *Id*. art. 46B.004(c) (Vernon Supp. 2013); *see Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (stating informal inquiry intended to determine whether issue of competency sufficiently raised such that formal hearing should be held). However, the fact that a defendant is mentally ill does not by itself mean that he is

14

incompetent; nor does the fact that he obstinately refuses to cooperate with his counsel or a trial court. *Turner*, 422 S.W.3d at 691.

Either party may suggest by motion, or a trial court may suggest on its own motion, that a defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a). A suggestion of incompetence "may consist solely of a representation from any credible source." *Id.* art. 46B.004(c-1). "A further evidentiary showing is not required to initiate the inquiry, and [a] court is not required to have a bona fide doubt about the competency of [a] defendant." *Id.* "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." *Id.* The factors include whether the defendant can: "(A) rationally understand the charges against [him] and the potential consequences of the pending criminal proceedings; (B) disclose to counsel pertinent facts, events, and states of mind; (C) engage in a reasoned choice of legal strategies and options; (D) understand the adversarial nature of criminal proceedings; (E) exhibit appropriate courtroom behavior; and (F) testify." *Id.* art. 46B.024(1) (Vernon Supp. 2013).

In conducting its informal inquiry, a trial court must consider only the evidence tending to show incompetency, "putting aside all competing indications

of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013).  A trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal.  *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).

If, after its informal inquiry, the trial court determines that evidence exists to support a finding of incompetency, the trial court "shall appoint" an expert to examine the defendant and "shall hold" a formal competency trial to determine whether the defendant is incompetent to stand trial.  *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.005, 46B.021(b) (Vernon 2006); *Turner*, 422 S.W.3d at 692.

Appellant asserts that the trial court did not engage in an "informal inquiry" into his competence.  He argues that it was required to do so because his "bizarre disruptions," "physical shaking," and "outbursts," before and during trial, as well as his failure to communicate with the trial court and counsel, "supported a finding" that he "did not have sufficient present ability to consult with his lawyer or understand the proceedings against him."

The record shows that defense counsel requested a "competency hearing" based on appellant's demeanor and his "inability to communicate" with counsel and the trial court.  Thus, the trial court was required to determine by informal inquiry whether there was some evidence from any source that would support a

finding that appellant might be incompetent to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *see also id.* art. 46B.004(c-1) (providing that suggestion of incompetence "may consist solely of a representation from any credible source," further evidentiary showing not required, and trial court "not required to have a bona fide doubt about the competency of the defendant").

Here, in assessing appellant's competence to stand trial, the trial court noted on the record that it had "watched [appellant] assisting" counsel "throughout" trial and did not have "any evidence whatsoever, other than him acting out," that he was not competent. Appellant's obstinate refusal to communicate with his trial counsel and the trial court did not, by itself, constitute incompetence. *See Turner*, 422 S.W.3d at 691. When defense counsel later stated that she wished to "renew the competency issue," the trial court asked whether there was any evidence of appellant's incompetency other than his "simply refusing to answer" her or the trial court. After defense counsel responded in the negative, the trial court denied her request.

The trial court had the opportunity to observe appellant's conduct first-hand and supplement its observations with its inquiry to defense counsel. *See Ross*, 133 S.W.3d at 627 (stating trial court's first-hand factual assessment of defendant's competency entitled to "great deference" on appeal); *see, e.g.*, *Jackson v. State*, 391 S.W.3d 139, 142 (Tex. App.—Texarkana 2012, no pet.) (concluding trial

17

court's inquiry to defense counsel coupled with its own observations of defendant constituted sufficient informal inquiry into defendant's competence). In making its informal inquiry, the trial court was not required to follow specific protocols. *See, e.g., Teal v. State*, No. 01-10-00506-CR, 2011 WL 6140676, at *2 (Tex. App.—Houston [1st Dist.] Dec. 8, 2011, pet. ref'd) (mem. op, not designated for publication) ("As its name suggests, an 'informal inquiry' does not have specific formal requirements.").

Appellant asserts that his numerous interruptions during court proceedings and his refusal to answer counsel and the trial court when prompted are probative of his incompetence to stand trial. However, disruptive courtroom conduct and a general failure to cooperate are not probative of incompetence to stand trial. *Burks v. State*, 792 S.W.2d 835, 840 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). "If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Id.* Further, appellant's refusal to communicate with counsel and the trial court did not overcome the presumption of his competence. *See, e.g., White v. State*, No. 02-12-00087-CR, 2013 WL 4210827, at *8 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (holding defendant's refusal to return to courtroom may have been disruptive, but not probative of incompetence); *DeWitt v. State*, No. 05-12-00583-CR, 2013 WL 3389055, at *2 (Tex. App.—Dallas July 3, 2013, no pet.)

18

(mem. op., not designated for publication) (stating defendant's failure to communicate with counsel did not demonstrate inability to communicate).

Here, although appellant's obstinance and refusal to cooperate constituted "violations of court decorum," it did not constitute evidence of an *inability* to factually appreciate the proceedings or to communicate with counsel and the trial court. *See Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (holding defendant's unruly and disruptive courtroom demeanor not probative of his competence to stand trial); *see also Ex parte LaHood*, 401 S.W.3d at 51–56 (concluding defendant's "multiple outbursts," "continu[ing] to talk when he was not supposed to," and refusal to "answer questions as he was directed" did not indicate incompetency).

Moreover, appellant's rude behavior did not consist of any bizarre or unusual rants that might signal incompetence. Rather, his interruptions were "timely, topical, and logically related to the questions and answers offered during the examination of other witnesses." *See Moore*, 999 S.W.2d at 395; *Lawrence v. State*, 169 S.W.3d 319, 322–23 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting defendant's rambling and nonresponsive answers to questions did not constitute evidence of incompetency because his answers revealed "he simply wanted his day in court and wanted an opportunity to tell his story his way"); *see, e.g.*, *Lopez v. State*, No. 04-12-00568-CR, 2013 WL 6533183, at *7 (Tex. App.—San Antonio

19

Dec. 11, 2013, no pet.) (mem. op., not designated for publication) (noting, although defendant refused to cooperate with counsel and interrupted proceedings by speaking out loud, nothing supported "a rational inference" his conduct was "'a product of mental illness rather than mere obstinacy'") (quoting *Turner*, 422 S.W.3d at 696)).

We hold that the trial court did not err in concluding that there was no evidence to support a finding that appellant was incompetent to stand trial. *See Luna*, 268 S.W.3d at 600; *Thomas*, 312 S.W.3d at 736–37. Further, because the trial court did not conclude through its informal inquiry that there was any evidence of appellant's incompetency to stand trial, we hold that it was not required to conduct a formal competency hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.005.

We overrule appellant's first issue.

### Exclusion from Trial

In his second issue, appellant argues that the trial court erred in excluding him from the courtroom because he did not insult the court or threaten anyone, and, although he was disruptive, it was not necessary to remove him. *See* U.S. CONST. amend. V, VI, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 33.03 (Vernon 2006).

A defendant has a constitutional and statutory right to be present throughout his trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970); TEX. CODE CRIM. PROC. ANN. art. 33.03. A trial court may, however, decide that it is necessary to remove an unruly defendant from the courtroom and continue the trial in his absence unless and until he "promise[s] to conduct himself in a manner befitting an American courtroom." *Allen*, 397 U.S. at 345–46, 90 S. Ct. at 1062. Thus, a defendant may forfeit his right to remain in the courtroom by engaging in misconduct. *Id.* at 342–43, 90 S. Ct. 1060–61; *see also* TEX. CODE CRIM. PROC. ANN. art. 33.03 (allowing voluntary absence after voir dire in jury trial).

Appellant was present throughout voir dire and the first day of trial without incident. Beginning the second day of trial, he, on several occasions, interrupted witness testimony. He then repeatedly refused to answer the trial court's questions regarding whether he intended to continue engaging in such misconduct. Prior to his removal, the trial court repeatedly warned appellant that he would be removed from the courtroom if he persisted in his unruly conduct. *See Allen*, 397 U.S. at 342–43, 90 S. Ct. at 1060–61.

Once removed, the trial court ensured that appellant was able to hear the trial while he was in the holdover cell, and it directed the bailiff to ask appellant, every thirty minutes to an hour, whether he wished to return to the courtroom. Throughout the proceedings, the trial court directed defense counsel to consult

with appellant about returning to the courtroom.  Further, on numerous occasions, the trial court encouraged appellant to return to the courtroom, admonished him concerning the dangers of missing his trial, and attempted to assess whether appellant would agree to conduct himself in an orderly manner.  *See id*.

Accordingly, we hold that the trial court did not err in excluding appellant from the courtroom.  *See id.* at 346, 90 S. Ct. at 1062; *Ramirez v. State*, 76 S.W.3d 121, 128–30 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding trial court acted within its discretion in removing defendant from courtroom when, despite having been warned he would be expelled from courtroom if disruptive behavior continued, defendant insisted behavior not disruptive and did not assure trial court he would remain silent).

We overrule appellant's second issue.

### Mistrial

In his third issue, appellant argues that the trial court erred in denying his motion for a mistrial because his misconduct tainted the jury against him.

A mistrial is appropriate only in extreme circumstances for a narrow class of highly prejudicial and incurable errors.  *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).  We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Juarez v. State*, 409 S.W.3d 156, 166 (Tex. App.—Houston [1st Dist.] 2013, pet.

22

ref'd). Whether a mistrial is required depends on the particular facts of the case. *Ocon*, 284 S.W.3d at 884. A trial court should grant a mistrial "only when residual prejudice remains" after less drastic alternatives are explored, such as instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand." *Id*. at 884–85.

Moreover, a trial court does not abuse its discretion in denying a mistrial based on the defendant's own misbehavior. *Molina v. State*, 971 S.W.2d 676, 682 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding trial court did not abuse its discretion in denying mistrial based on defendant's own outbursts); *see, e.g.*, *Granados v. State*, No. 01-10-00547-CR, 2011 WL 5026406, at *5 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication) (noting trial court not required to "reward" defendant with mistrial based on his own disruptive outbursts during trial). A defendant cannot be permitted by his own disruptive behavior to avoid being tried. *Allen*, 397 U.S. at 346, 90 S. Ct. at 1062.

Accordingly, we hold that the trial court did not err in denying appellant's motion for mistrial, which was predicated on his own misconduct.

We overrule appellant's third issue.

**Jury Instruction**

In his fourth issue, appellant argues that the trial court erred in denying his request that the jury be instructed not to consider his absence from the courtroom because such an instruction would have been proper during the guilt phase of trial and the State exacerbated the error by encouraging the jury to consider it in determining his sentence. In support of his argument, appellant relies on *People v. Sully*, 812 P.2d 163 (Cal. 1991).

Appellant has provided no binding authority requiring a trial court to instruct a jury to disregard a defendant's absence from the courtroom after his removal for his own disruptive behavior. And we note that a defendant may not "create reversible error by his own manipulation." *See Beasley v. State*, 634 S.W.2d 320, 321 (Tex. Crim. App. 1982). Accordingly, we hold that the trial court did not err in denying appellant's request that it instruct the jury to disregard his absence after his own disruptive behavior required his removal from the courtroom.

We overrule appellant's fourth issue.

**Ineffective Assistance of Counsel**

In his fifth issue, appellant argues that his trial counsel's performance was deficient because counsel failed to request, or object to the lack of, a jury instruction in the trial court's charge to disregard his in-court behavior and absence from trial.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Having held that appellant was not entitled to have the trial court instruct the jury not to consider his absence from the courtroom, his trial counsel could not have been ineffective for not requesting, or objecting to the lack of, such an

25

instruction in the jury charge. *See Rodriguez v. State*, 899 S.W.2d 658, 668 (Tex. Crim. App. 1995) (holding counsel not ineffective for not requesting instruction to which defendant was not entitled). Appellant also was not entitled to have the trial court instruct the jury to disregard his in-court misconduct. *See Granados*, 2011 WL 5026406, at *4–5. Thus, appellant's counsel could not have been ineffective for not requesting such an instruction in the court's charge or objecting to the lack of such an instruction. *See Rodriguez*, 899 S.W.2d at 668.

Further, as discussed above, the record shows that the trial court actually denied counsel's requests, made during the trial, that it instruct the jury to disregard appellant's in-court behavior and his absence. Moreover, the record does not show that appellant moved for a new trial. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

We hold that appellant has not shown that his trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 143–44.

We overrule appellant's fifth issue.

26

## Evidentiary Issues

In his sixth issue, appellant argues that the trial court erred in admitting into evidence certain "inflammatory" photographs because their probative value was "greatly outweighed by their prejudicial effect."

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. The opponent of the evidence must demonstrate that its negative attributes substantially outweigh any probative value. *Montgomery*, 810 S.W.2d at 377. A rule 403 analysis must balance (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of

the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Here, appellant first asserts that the photographs admitted into evidence at trial as State's exhibits 66 through 69 and 182 through 185 are "highly inflammatory" and their "prejudicial nature . . . outweighs any probative value." Specifically, he asserts that State's exhibit 66, which shows the complainant's hand close-up as he lay on the floor of the apartment, is not relevant to any issue in the case and was offered "to evoke sympathy [that] this is a little boy who wears rubber bands on his wrist." And appellant asserts that State's exhibits 182 through 185, which depict the contents of the complainant's pockets, namely, money and a paper from his school, are not probative of any issue in the case. He further argues that exhibit 185, which shows the complainant's homework, is prejudicial because it emphasizes that he was in the fourth grade.

The record reveals that appellant asserted in his statement, which was admitted into evidence, that he continued to shoot into Carter's apartment because he had seen someone "flash something at the window." Thus, exhibits 66 and 182

through 185, which show that the complainant did not have a weapon, make appellant's self-defense claim less probable. *See* TEX. R. EVID. 401.

Additionally, the probative value of exhibits 66 and 182 through 185 was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Given appellant's defensive theory, the State's need to show that the complainant was unarmed was high. *See Gigliobianco*, 210 S.W.3d at 641–42. The jury had already heard the complainant described through various testimony as a "child" and had seen State's exhibit 145, which is a photograph of the complainant taken before the shooting. Thus, the photographs showing that the complainant was in fourth grade and wore rubber bands on his wrist had low potential to suggest a decision on an improper basis or to confuse or distract the jury from the main issues. *See id.* And the time the State needed to develop this evidence was minimal. *See id.*

Appellant next asserts that State's exhibits 67, 68, and 69, which show close up the gunshot wounds to the complainant's head, are "exceptionally gruesome" and cumulative of the autopsy report and medical examiner's testimony. Further, he argues that "they are not representative of the scene as it was found" because the complainant had been turned over.

We note that crime scene photographs are almost always relevant because they "depict the reality of [the] offense" and may show the manner in which it

occurred.  *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999).  In determining the prejudicial effect of photographs, a court should consider (1) the number of photographs, (2) the size of the photographs, (3) whether the photographs are in color or black and white, (4) the detail shown in the photographs, (5) whether the photographs are gruesome, (6) whether a body shown in the photographs is naked or clothed, and (7) whether the photographed body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment.  *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000).

Exhibits 67, 68, and 69 are three photographs, which appellant asserts were in color when published to the jury on a fifty-inch screen in the courtroom, showing in detail the multiple gunshot wounds the complainant suffered to his head.  *See id.*  The photographs are gruesome.  *See id.*  And because the complainant's body was turned over at the scene, the gruesomeness of exhibit 69 is enhanced in that it depicts brain matter having exited through one of the wounds. *See id.*  However, photographs provide powerful visual evidence of the offense, and a trial court does not abuse its discretion in admitting photographs into evidence merely because they may be gruesome.  *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995).

In *Chamberlain*, the Texas Court of Criminal Appeals rejected the premise that the photographs accompanying the testimony in that case were cumulative, or of insignificant probative value. 998 S.W.2d at 236–37. The court explained that "[v]isual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Id.* at 237. Although it further concluded that the photographs before it, which showed close up the bullet wounds suffered by the victim and included a close-up of the victim's face with brain matter extruded through a large wound on the side of the head, were "gruesome in that they depict[ed] disagreeable realities," it held that the photographs depicted "nothing more than the reality of the brutal crime committed." *Id.*

Here, as did the court in *Chamberlain*, we conclude that exhibits 67, 68, and 69 are probative of the crime scene and the injuries suffered by the complainant. *See id.* These photographs are no more gruesome than would be expected, given the nature of the injuries inflicted. *See id.* The fact that the complainant's body was rolled over to assess his injuries did not render the photographs inadmissible. *See Prible v. State*, 175 S.W.3d 724, 734–35 (Tex. Crim. App. 2005). And the danger of unfair prejudice did not substantially outweigh the probative value of the photographs. *See* TEX. R. EVID. 403.

31

Accordingly, we hold that the trial court did not err in admitting into evidence State's exhibits 66 through 69 and 182 through 185.

We overrule appellant's sixth issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Justice Sharp, dissenting. Dissent to follow.

Publish. TEX. R. APP. P. 47.2(b).