**Affirmed and Opinion filed April 18, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00762-CR

## DIVA MARIA BABEL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 2110183**

## Opinion

Appellant Diva Maria Babel pleaded "guilty" and was convicted of driving while intoxicated.[1] Before her plea, appellant moved to suppress evidence on grounds that the trooper conducting the traffic stop had no reasonable suspicion of

---

[1] Appellant pled guilty to the charge of DWI to the Court without an agreed recommendation, while retaining her right of appeal. The court sentenced appellant to three days in the Harris County Jail.

criminal activity. The trial court denied the requested relief, and appellant now challenges that pretrial ruling. We affirm.

## I. Background

On September 5, 2016, just before 8:00 p.m., Texas D.P.S. Trooper A. Huayamave was on routine patrol on highway FM 529 in Harris County, Texas. The sky was clear, and traffic was heavy. Huayamave testified that he believed visibility was not less than 1,000 feet. As shown by State's Exhibit 1, the video from Huayamave's on-board dash camera,[2] almost all the other cars on the roadway had their head lamps illuminated. The street lamps along the roadway were illuminated. Businesses located on the roadway were illuminated by private light poles. Although it was clear, the sky was not brightly lit. The dash camera continuously adjusted to the lighting conditions to accommodate for the decreasing amount of light in the sky.

The camera began recording around 7:56 p.m., as Huayamave turned onto the roadway; appellant's car was visible in the distance and her headlights were off. Huayamave passed appellant on the roadway while traveling in the same direction as appellant. The headlights and taillights of appellant's car were not illuminated. After passing appellant's vehicle, Huayamave drove ahead, then stopped in the middle of the road in a turn lane. As pointed out on direct examination, only one other car did not have its headlamps illuminated, and passed Huayamave, while he was in the middle lane. Huayamave testified that he may have missed another car traveling past him without lights on because at this point,

---

[2] State's Exhibit No. 01 contains two video files. The first video file, found under the "Camera 0" file, is of footage captured from the dashboard looking forward through the windshield. *Id*. The second video file, found under the "Camera 2" file, is footage of the inside compartment of the patrol vehicle. Id. This second video file only begins after appellant was placed under arrest. *Id*

he was focused on appellant's vehicle. While stopped in the middle lane, Huayamave watched appellant's car to see if she was going to activate her lights. Appellant passed Huayamave's patrol vehicle and did not have her headlights illuminated.

At 7:56 p.m., Huayamave pulled behind Appellant's car and activated his emergency lights. Appellant immediately began to pull over. Once appellant came to a stop in an adjacent parking lot, Huayamave began his investigation. At 7:58 p.m., Huayamave informed appellant that her front headlamps were not illuminated. Appellant responded in confusion about whether her headlamps were actually activated or not. Appellant never indicated a belief that she was not required to have her headlamps illuminated. Appellant asked Huayamave "so they're, like, completely off?" Huayamave indicated the possibility that the headlamps were "burnt." Huayamave's investigation quickly dispelled this possibility, though, when he reached into appellant's vehicle and manually activated the headlights. At 7:58, Huayamave asked appellant whether she's "doing okay." At 7:59, Huayamave relayed to appellant that he observed her "driving kind of slowly, too." The sky had noticeably darkened since the beginning of the video. Thereafter, the video shows Huayamave administering a series of field sobriety tests and placing appellant under arrest.

On September 05, 2016, appellant was charged by information with the misdemeanor offense of Class B driving while intoxicated. On June 20, 2017, the State amended the information to reflect a blood alcohol concentration level of at least .15, increasing the offense level to a Class A misdemeanor. *Id*. On June 23, 2017, the trial court held a hearing on the appellant's motions to suppress. The trial court denied appellant's motions to suppress at the end of that hearing, and

3

appellant pled guilty to the offense of Driving While Intoxicated. Appellant was sentenced to three days in Harris County Jail.

## II. Analysis

Appellant contends the trial court abused its discretion in denying appellant's motion to suppress and motion to find Sections 541.401(5) and 547.302(a)(1) of the Transportation Code unconstitutional.

### A. Motion to suppress

In her first issue, appellant contends that the trial court abused its discretion in denying her motion to suppress, on the grounds that Huayamave made a traffic stop for an offense that was not being committed, namely an alleged traffic law violation of driving without headlights at nighttime (*i.e.*, 30 minutes after sunset) or when visibility is less than 1,000 feet. According to appellant, sunset occurred at 7:37 pm, thus, the earliest time that Huayamave could have pulled appellant over under Section 547.302 of the Texas Transportation Code is 8:07 p.m. Appellant contends that the "arrest was made 7 minutes before the law mandated that appellant turn on her headlights. The stop certainly occurred earlier."

The State concedes the entire thirty-minute time period had not actually expired at the time Huayamave initiated the stop; however, the State argues that Huayamave had a reasonable, albeit mistaken, suspicion that appellant was committing the crime of failing to display her lights.

#### 1. Standard of review

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard: we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review. *Ramirez-*

4

*Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).  When the record supports the trial court's determination of historical facts, as well as mixed questions of law and fact that rely on credibility, we grant the trial court's determinations almost total deference.  *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013).  We review *de novo* the trial court's application of the law to the facts.  *Ramirez-Tamayo*, 537 S.W.3d at 35.  When, as in this case, the trial judge does not make formal findings of fact, we uphold the trial court's ruling on any theory of law applicable to the case and presume the court made implicit findings in support of its ruling, if the record supports those findings. *Tutson v. State*, 530 S.W.3d 322, 326 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Under the Fourth Amendment, an officer must have reasonable suspicion to justify a warrantless detention that amounts to less than a full custodial arrest. *Kerwick*, 393 S.W.3d at 273.  An officer may make a traffic stop if the reasonable-suspicion standard is satisfied.  *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018).  An officer has reasonable suspicion if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity.  *Id*.  We review reasonable suspicion by considering the totality of the circumstances.  *Id*.  This examination is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop.  *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016).  An officer's reasonable mistake does not render a traffic stop illegal.  *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 532, 536 (2014); *Illinois v. Rodriguez*, 497 U.S. 117, 185 (1990) (it is not required that factual determinations made by agents of the government "always be correct, but that they always be reasonable").

When a police officer stops an individual without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing. *Cortez*, 543 S.W.3d at 204. Because Huayamave arrested appellant without a warrant, the State had the burden to prove reasonable suspicion for the traffic stop. *See id*.

**2. Texas Transportation Code Section 547.302**

The trooper pulled appellant over for suspicion of violating Texas Transportation Code section 547.302, entitled "Duty to Display Lights," which provides:

> (a) A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle:
>
> > (1) at nighttime; and
> >
> > (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead.
>
> (b) A signaling device, including a stoplamp or a turn signal lamp, shall be lighted as prescribed by this chapter.
>
> (c) At least one lighted lamp shall be displayed on each side of the front of a motor vehicle.
>
> (d) Not more than four of the following may be lighted at one time on the front of a motor vehicle:
>
> > (1) a headlamp required by this chapter; or
> >
> > (2) a lamp, including an auxiliary lamp or spotlamp, that projects a beam with an intensity brighter than 300 candlepower.

Tex. Transp. Code § 547.302. Additionally, the Texas Transportation Code defines "nighttime" as "the period beginning one-half hour after sunset and ending one-half hour before sunrise." Tex. Transp. Code § 541.401(5).

6

### 3.     Reasonable suspicion to stop

In this case, it is undisputed that sunset occurred at 7:37 p.m. It is also undisputed that Huayamave testified that he arrested appellant around 8:00 p.m. According to appellant, the arrest was made 7 minutes before the law mandated that appellant turn on her headlights, and the stop occurred even earlier. Thus, appellant argues "the stop was illegal as it occurred before the time necessary for displaying headlights." The State contends Huayamave reasonably believed it to be nighttime, thus justifying the stop.[3]

"The Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable." *Heien,* 135 S. Ct. at 539; *see also Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012). Huayamave testified at the time he pulled over appellant, store lights were on, street lamps were on, and possibly all but one other car's headlights were turned on. Huayamave's testimony is corroborated by the dash camera video. The trial court commented during the hearing that "it's totally unreasonable to expect [Huayamave] to get on his radio and call headquarters [sic] what time does the sun set tonight" when the trooper is in the middle lane on a five lane road with moderate to heavy traffic traveling in both directions.[4] We agree and conclude that it was objectively reasonable for an officer in Huayamave's position to believe both that thirty minutes had elapsed after sunset, and that appellant's failure to turn

---

[3] The State did not argue that Huayamave was following the second prong of Section 547.302; however, under cross-examination, defense counsel did elicit testimony that the trooper could see well over 1000 feet in the distance. Thus, the only reason for the stop that the State relied upon was that the headlights were not activated 30 minutes after sunset.

[4] The trial court went on to comment:

All right. And, you know, he said he's keeping an eye on this vehicle that's coming up behind him. It would be unreasonable for him to get on his radio and ask what time does the sun set while he is trying—The number one thing he's thinking is keeping an eye on this vehicle that does not have his lights on.

on her headlights was a violation of Texas law. Because Huayamave's mistaken belief of the timing of sunset (approximately eleven minutes) was reasonable under the totality of the circumstances, the trial court did not abuse its discretion in determining Huayamave had reasonable suspicion to stop appellant's car.[5] *See Cortez*, 543 S.W.3d at 209. We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant's first issue is overruled.

**B.** **Motion to find Transportation Code Sections 541.401(5) and 547.302(a)(1) unconstitutionally vague as applied to appellant**

In her second issue, appellant argues that the trial court abused its discretion in denying her motion to declare Texas Transportation Code Sections 541.401(5) and 547.302(a)(1) unconstitutional. Specifically, appellant argues that Section 541.401(5) is unconstitutionally vague because neither "sunset" nor "sunrise" are defined in the Texas Transportation Code. Thus, appellant contends that "it would be impossible for a person to know at what point they must display their headlights" without "looking up the exact time that sunset or sunrise occurs."

The State disagrees, maintaining that the term "sunset" is common throughout the law and common law, and accepted in almost every jurisdiction in this country. As such, the State maintains the term is not so ambiguous that a reasonably intelligent person could–or appellant–could not know what it meant.

---

[5] The parties do not cite to any Texas cases interpreting the reasonableness of a mistaken belief in the timing of "sunset." Two cases interpreting similar statutes provide guidance. First, Supreme Court for the State of Washington determined that an officer had a reasonable mistaken belief based on his observations about the time of the stop; he believed it was 30 minutes after sunset when it was actually 24 minutes after sunset at the time of the stop. *State v. Snapp*, 275 P.3d 289, 300 (Wash. 2012). The Court of Appeals for the State of Minnesota, similarly, found that an officer's good-faith-mistaken belief based on his observations that sunset had occurred. *State v. King*, No. A09-1214, 2010 WL 1440277, at *3 (Minn. Ct. App. Apr. 13, 2010) (not designated for publication).

### 1.    Standard of review

A vagueness challenge is applicable to all criminal laws, not just those that regulate speech. *Duncantell v. State*, 230 S.W.3d 835, 844 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Webb v. State*, 991 S.W.2d 408, 416 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). A statute will be declared unconstitutionally vague if "its prohibitions are not clearly defined." *State v. Markovich*, 77 S.W.3d 274, 279 (Tex. Crim. App. 2002) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The vagueness doctrine, however, is not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. *Webb*, 991 S.W.2d at 416.

Whenever an attack upon the constitutionality of a statute is presented for determination, we begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *Morris v. State*, 833 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). The burden rests upon the individual challenging the statute to establish its unconstitutionality. *Id*. It is the duty of this court to uphold the statute if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Morris*, 833 S.W.2d at 627.

A reviewing court must make a two-part inquiry in the examination of a criminal statute for vagueness. The first inquiry is whether an ordinary, law-abiding person receives sufficient information from the statute that her conduct risks violating the criminal law. *State v. Fry*, 867 S.W.2d 398, 401 (Tex. App.—

9

Houston [14th Dist.] 1993, no pet.). All penal laws must give notice to the populace about what activity is made criminal, to provide fair notice to persons before making their activity criminal. *Id*. (citing *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989) (en banc)). A criminal statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices. *Id*. (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). A statute is unconstitutionally vague only when no core of prohibited activity is defined. *Id*. (citing *Briggs v. State*, 740 S.W.2d 803, 806 (Tex. Crim. App. 1987)).

The second inquiry involves a determination of whether the statute provides sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement. *Fry*, 867 S.W.2d at 401 (citing *Bynum*, 767 S.W.2d at 773; *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988)). A statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions. *Id*. (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)). Either of these inquiries forms an independent basis for a finding of vagueness. *Id*. (citing *Adley v. State*, 718 S.W.2d 682, 685 (Tex. Crim. App. 1985)).

A statute is not unconstitutionally vague merely because it fails to define words or terms used. *Fry*, 867 S.W.2d at 401 (citing *Engelking*, 750 S.W.2d at 215). When words are not defined, they are ordinarily given their plain meaning, unless the statute clearly shows that they were used in some other sense. *Id*. at 401–02 (citing *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App. 1988)). In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Id*. (citing *Ely*, 582 S.W.2d at 419).

## 2. "Sunset" is not unconstitutionally vague

Contrary to appellant's contentions, Texas Transportation Code § 541.401(5), as implemented through Texas Transportation Code § 547.302(a)(1) is not unconstitutionally vague as applied here.

Section 547.302(a)(1) requires, in relevant part, that a vehicle shall display each lighted lamp and illuminating device "at nighttime…" Tex. Transp. Code § 547.302(a)(1). "Nighttime" is defined as "the period beginning one-half hour after *sunset* and ending one-half hour before sunrise." Tex. Transp. Code § 541.401(5) (emphasis added). Appellant's contention that the determination of "sunset" is "impossible for a person to know" is incorrect.

A person of common knowledge and reason would understand "sunset" to be when the sun goes down. The term itself is used with frequency in the law as a point of reference. *See, e.g., Parrish v. State*, 134 S.W.2d 271, 272 (Tex. Crim. 1939) ("[w]e think the court was correct in defining nighttime as beginning thirty minutes after sunset and continuing until thirty minutes before sunrise"); Tex. Parks & Wild. Code § 31.103 (prohibiting operation of a recreational watercraft 30 minutes after sunset); Tex. Parks & Wild. Code § 59.301 (prohibiting hunting certain game 30 minutes after sunset); Tex. Gov't Code § 3100.052 (allowing counties to adopt juvenile curfews after sunset); Tex. Fin. Code § 59.305 (requiring ATM's to be lit after sunset); Tex. Fin. Code § 59.301 (requiring parking lots for ATMs to be lit after sunset).

In fact, appellant contended during the motion to suppress hearing that Huayamave's stop was illegal because the exact timing of sunset can be discovered without difficulty, and elicited testimony based on that contention. States that have addressed the definition of "sunset" have referred to how a citizen can, without difficulty, discover the timing of sunset. *See, e.g., State v. Gresser*, 657 N.W.2d

11

875, 883 (Minn. 2003) (boating statute's reliance on "sunset" was not unconstitutionally vague); *State v. Johnson*, 867 P.2d 1090, 1092 (Mont. 1994) (hunting statute's reliance on "sunrise" and "sunset" was not unconstitutionally vague). As such, appellant, or a reasonably intelligent person in appellant's shoes, was given a reasonable opportunity to know what the term "sunset" meant. *See Bynum*, 767 S.W.3d at 773. Moreover, the term "sunset" provides law enforcement with sufficient guidance in their enforcement of the law. We conclude Huayamave's reasonable mistake about the timing of "sunset" does not invalidate the statute or render it unconstitutionally vague.

Appellant's second issue is overruled.

### III. Conclusion

The judgment of the trial court is affirmed.


/s/    Margaret "Meg" Poissant
      Justice


Panel consists of Wise, Jewell, and Poissant

Publish — TEX. R. APP. P. 47.2(b).