**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00235-CR**
_____

**ROBERT ALAN CORDRAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-09-12412-CR**

---

**MEMORANDUM OPINION**

A jury convicted appellant Robert Alan Cordray of theft as a habitual felony offender and assessed punishment at imprisonment for life. In three appellate issues, Cordray argues the trial court erred by: (1) failing to conduct an informal competency inquiry after Cordray filed a *pro se* motion and provided some evidence of incompetency, (2) admitting physical evidence recovered from an allegedly unlawful stop of his vehicle, and (3) denying his motion for mistrial. We affirm the trial court's judgment.

1

PERTINENT BACKGROUND

On July 15, 2019, the day trial began, Cordray filed a handwritten motion for a sixty-day continuance, in which he sought a continuance "so that he may be evaluated[,] and his competency and sanity assessed." Cordray's motion stated that he "advises a conspiracy is in play." Counsel asserted that Cordray suffers from cirrhosis of the liver, which causes "mental issues affecting his mind and memory." Attached to Cordray's motion as an exhibit was a "Medical Treatment Order for Housing CMGC" stating that Cordray had cirrhosis, hypertension, and swelling of his lower extremities.

Before voir dire began, Cordray's counsel presented Cordray's motion for continuance to the trial judge. According to counsel, Cordray alleged that he was incompetent to stand trial and was also possibly insane. Defense counsel indicated that Cordray alleged "he does not understand what is happening and cannot assist his lawyers." The following colloquy then occurred between Cordray's two defense attorneys and the trial judge:

> THE COURT: I have to say for the record that he appeared to totally understand what was going on this morning. He discussed at length the [plea] offer that was made to him prior to today and wanted to accept it. And then the State said no, they were . . . no longer offering that offer, it is the day of trial.
>     I have dealt with him over the last year. He never exhibited any signs that I could see of any mental illness at all. . . .
>
> [DEFENSE COUNSEL]: I believe I have been able to effectively communicate with Mr. Cordray at all times. I have received . . . letters

2

from him that appear to be cogent that seem to exhibit a better than average [understanding] of the King's English. He has asked me appropriate questions during my representation of him. I do not join in his motion, but I do present it to the Court and ask the Court to give it its fullest consideration.

. . .

THE COURT: Here is my concern. My concern is that [defense counsel] is a very competent attorney. I have known him for years. And there have been cases where you have filed an insanity or incompetency motion where you believed that your client ha[d] issues. But in this case[,] there are no motions indicating that prior to right now. And . . . he appears to understand what is going on. In fact, he appears to have almost a better understanding than most of the defendants that I deal with. So[,] I am not inclined to grant this. But I appreciate that you filed it.

The trial judge denied Cordray's motion.

The trial judge acknowledged Cordray's written pretrial motion to suppress, in which Cordray alleged that the traffic stop was illegal because "[t]he actions of the arresting officer violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure." In the motion, Cordray sought suppression of (1) tangible evidence officers seized during the traffic stop and any testimony regarding such evidence, (2) evidence of his detention and arrest, as well as any testimony regarding such evidence, and (3) his written and oral statements and any testimony regarding such statements. The trial judge decided to carry the

motion to suppress during trial and "then. . . maybe have [counsel] approach or maybe send the jury out" to address the motion.

Sergeant Ian Trotter of the Conroe Police Department testified that on September 14, 2018, he was on night duty as a street sergeant, and he responded to an alarm call at Bank of America at approximately 1:55 a.m. Trotter explained that the alarm company reported that someone was breaking into the bank's ATMs, and Trotter was looking for suspects as he approached the bank. Officer Jordan Dugas of the Conroe Police Department testified that because the call involved an active alarm, the bank's security cameras "were live feeds that were giving descriptions of the suspects that were on scene breaking into the ATMs."

According to Trotter, the only car on the road as he approached the area was driven by another officer who was in front of him. Trotter encountered a pickup truck as he was approaching an intersection, and he believed the truck might be associated with the alarm call because the truck was traveling along the fastest route away from the bank, so he began to follow the vehicle. Trotter testified that the truck ran through a red light. The truck had a temporary tag, but Trotter explained that he could not read the license plate number due to a reflection on the tag's plastic cover.

Trotter radioed other officers that he was about to make a traffic stop. When Trotter activated his lights, the truck did not stop, but instead changed lanes and accelerated, which made Trotter suspicious. Trotter explained that he was concerned

4

that the driver would flee, leading to a dangerous pursuit, so he backed off and allowed other officers in front of him to either perform a traffic stop or continue pursuing the truck. According to Trotter, the vehicle continued to drive for almost a minute after Trotter activated his lights, and he and the officers decided to perform a felony stop. Upon stopping the vehicle, officers saw that the truck was occupied by a male and a female. At trial, Trotter and Dugas identified the male subject as Cordray.

The trial court overruled the motion to suppress and stated that Trotter had reasonable suspicion to stop the vehicle. Trotter then testified that upon stopping the vehicle, he saw some twenty-dollar bills on the passenger-side floorboard, and he noted that the female passenger was wearing black pants, which was consistent with what he saw on the surveillance photo he had received from dispatch, and a camouflage jacket, which was also consistent with the surveillance photo, was in the backseat. Trotter testified that in the surveillance photo, the male subject was holding a crowbar and had a shirt or towel tied around his face. Dugas testified that the clothing he recovered from Cordray matched the clothing the male suspect was wearing in the bank surveillance video. Dugas also testified that he and Trotter saw a crowbar in Cordray's truck. After the traffic stop, Trotter went to the Bank of America, and he saw that an ATM had been pried open with a metal object.

Brandy Theriaque testified that she was arrested with Cordray on the date in question. According to Theriaque, Cordray went to Home Depot to rent a hand saw to cut open a safe inside an ATM, but the blade Cordray received did not fit the saw, so they decided to break into an ATM with a crowbar. Theriaque testified that Cordray chose the Bank of America in Conroe because of its secluded location. Cordray opened an ATM with a crowbar, and Theriaque put her hand inside the machine and removed money. At one point, Theriaque testified that Cordray "had a blue warrant placed[,]" and the trial court sustained defense counsel's objection to the testimony. Defense counsel then moved for a mistrial,[1] and the trial court overruled the motion.

## ISSUE ONE

In his first issue, Cordray argues that the trial court erred by failing to conduct an informal competency inquiry after Cordray had filed a motion for continuance, in which he contends he provided some evidence of incompetency. We review challenges to the adequacy of a trial court's informal competency inquiry for an abuse of discretion. *George v. State*, 446 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We must not substitute our judgment for that of the trial court; rather, we are to determine whether the trial court's decision is arbitrary or unreasonable. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009),

---

[1] Defense counsel stated, "Judge, I would ask for a mistrial."

6

*superseded by statute on other grounds* (holding that the trial court is "in a better position to determine whether [the defendant] was presently competent").

"[I]ncompetency to stand trial is shown if the defendant does not have: '(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person.'" *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (quoting Tex. Code Crim. Proc. Ann. art. 46B.003(a)). "An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Id*. (citing Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c), (c-1)). Some evidence must be presented during the informal inquiry that would support a finding that the defendant may be incompetent to stand trial. *Id*. (citing Tex. Code Crim. Proc. Ann. art. 46B.004(c)). To move onto the next step, which is a formal competency trial, there must be "'some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.'" *Id*. (quoting Tex. Code Crim. Proc. Ann. art. 46B.004(c)).

The trial court need not follow a specific protocol or procedure in conducting an informal competency inquiry. *George,* 446 S.W.3d at 501. During the informal inquiry, the trial court should focus on whether there is "some evidence" of incompetency to stand trial. *Boyett*, 545 S.W.3d at 563 (citing Tex. Code Crim. Proc. Ann. art. 46B.004(c)). "Some evidence" means "'more than none or a scintilla'" of

7

evidence that "'rationally may lead to a conclusion of incompetency.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013)).

Cordray asserts that the trial court failed to conduct an informal inquiry. We disagree. As discussed above, Cordray filed a motion for continuance, in which he alleged that his mind and memory were affected by cirrhosis of the liver, asserted that a conspiracy exists, and requested a continuance to have his competency evaluated. The medical treatment order that Cordray provided as an exhibit to his motion did not indicate that Cordray's cirrhosis caused him to suffer from any psychiatric or psychological problems. During the informal inquiry, the trial judge noted that Cordray seemed to understand the proceedings that day; Cordray had expressed a desire to accept the State's plea offer, which had been withdrawn; and she noted that Cordray never exhibited any signs of mental illness over the course of her dealings with him "over the last year." The trial judge also heard from Cordray's counsel, who stated that he believed he had always been able to effectively communicate with Cordray and that Cordray's letters to him demonstrated a "better than average" level of understanding. Defense counsel also noted that during his representation of Cordray, Cordray had asked appropriate questions.

On this record, we conclude that the trial court conducted an informal inquiry regarding Cordray's competency, and we cannot say that the trial court abused its

discretion by concluding that there was no evidence of incompetency. *See* Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c), (c-1); *Boyett*, 545 S.W.3d at 563-64. Accordingly, we overrule issue one.

## ISSUE TWO

In his second issue, Cordray contends the trial court erred by admitting physical evidence recovered from the traffic stop because the police lacked a legal basis for stopping him. Specifically, Cordray asserts that he was not required to stop when facing a yield sign, and he maintains that the photograph of the temporary license tag from his vehicle "reveals that the tag was in no way obscured."

We construe Cordray's issue as challenging the trial court's denial of his motion to suppress. We review the trial court's ruling on a motion to suppress for an abuse of discretion, and we will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In a hearing on a motion to suppress, the trial judge "is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We conduct our review using a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on

evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review *de novo* a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The stopping of a vehicle by law enforcement amounts to a seizure within the meaning of the Fourth Amendment. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). "A seizure based on reasonable suspicion or probable cause will generally be reasonable." *Id*. (citing *Whren v. U.S.*, 517 U.S. 806, 818 (1996)); *see also Terry v. Ohio*, 392 U.S. 1, 21-23 (1968). Reasonable suspicion exists when an officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In reviewing reasonable suspicion, we consider the totality of the circumstances. *Babel v. State*, 572 S.W.3d 851, 856 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A traffic violation committed in an officer's presence authorizes an initial stop. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982); *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim.

10

App. 1992). "An officer's reasonable mistake does not render a traffic stop illegal." *Babel*, 572 S.W.3d at 856.

Assuming without deciding that Trotter was mistaken that Cordray was required to stop at the intersection, any error by Trotter in concluding that Cordray failed to stop when required to do so did not render the traffic stop illegal. *See id.* In addition, section 503.069(a) of the Texas Transportation Code provides that a temporary paper tag must be displayed in accordance with commission rules.[2] Tex. Transp. Code Ann. § 503.069(a). The rules require as follows, in pertinent part: "All printed information on a temporary tag must be visible *and may not be covered or obstructed by any plate holder or other device or material*." Tex. Admin. Code § 215.151(c) (emphasis added). As discussed above, Trotter testified that light reflecting on the plastic covering on Cordray's temporary tag made the tag illegible. Therefore, Trotter had reasonable suspicion that the temporary tag on Cordray's vehicle violated the applicable rules. *See id.; Garcia*, 43 S.W.3d at 530; *Pabst v. State*, 466 S.W.3d 902, 906-07 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that an officer who could not read the temporary tag from four or five feet behind the defendant's vehicle had reasonable suspicion to stop the vehicle); *see also* Tex. Transp. Code Ann. § 503.069(a).

---

[2] "Commission" refers to "the board of the Texas Department of Motor Vehicles." Tex. Transp. Code Ann. § 503.001(2).

Trotter also testified that he responded to the bank's alarm at approximately 1:55 a.m., when there were no other cars on the road except another police car, and Trotter explained that he believed Cordray's truck might be involved with the alarm call because Cordray was traveling along the fastest route away from the bank. Furthermore, Trotter testified that when he activated his vehicle's lights, Cordray did not immediately stop, but instead accelerated and changed lanes. Giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions that turn on evaluation of credibility and demeanor, we conclude that the trial judge did not abuse her discretion by denying Cordray's motion to suppress and admitting the complained-of evidence. *See Martinez,* 348 S.W.3d at 922; *Garcia*, 43 S.W.3d at 530. Accordingly, we overrule issue two.

## ISSUE THREE

In issue three, Cordray argues that the trial court erred by denying his motion for mistrial after Theriaque testified that he had a blue warrant.[3] Cordray also complains that the trial court failed to instruct the jury to disregard Theriaque's statement. We review the trial court's refusal to grant a mistrial for abuse of discretion. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Adams v.*

---

[3] A blue warrant is a warrant issued by the parole division for the arrest of a person suspected of violating parole. *See Dean v. State*, 900 S.W.2d 367, 367 (Tex. App.—Texarkana 1995, no pet.).

*State*, 156 S.W.3d 152, 157 (Tex. App.—Beaumont 2005, no pet.). We must uphold a trial court's ruling on a motion for mistrial if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

A defendant complaining of error in the admission of evidence should first object, then request an instruction to disregard, and move for a mistrial if he believes the instruction to disregard was insufficient to cure the error. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). An instruction to disregard generally cures any prejudice. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). We will not reverse for an error that could have been cured by an instruction when the complaining party did not seek those lesser remedies from the trial court. *See Young*, 137 S.W.3d at 70. Mistrial is appropriate in extreme circumstances "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). In determining whether allegedly prejudicial testimony warrants a mistrial, we consider (1) the severity of the misconduct and the magnitude of the prejudicial effect, (2) the curative measures taken, and (3) the certainty of conviction absent the misconduct. *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004).

The record reflects that Cordray's counsel did not request lesser curative measures, such as an instruction to disregard the complained-of testimony, before moving for mistrial, and counsel did not explain the basis for his motion for mistrial.

13

*See* Tex. R. App. P. 33.1(a) (requiring complaints to be preserved for appeal by making a timely request, objection, or motion in the trial court that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint); *see also Young*, 137 S.W.3d at 70.

Even if Cordray had properly preserved this issue for appellate review, he would not prevail. Given Theriaque's single, unexplained reference to a blue warrant, as well as the possibility that the jury might not have known the meaning of the term, we conclude that the complained-of testimony had little, if any prejudicial effect. *See Ramon*, 159 S.W.3d at 929. Because Cordray's counsel did not request a curative instruction, we resolve the second *Ramon* factor in favor of the trial court's denial of Cordray's motion for mistrial. *See id*. Lastly, we consider the strength of the other evidence supporting Cordray's conviction. *See id*. When Theriaque testified regarding a blue warrant, the jury had already heard overwhelming evidence of Cordray's guilt. Theriaque had testified that she and Cordray planned to break into the ATM with a crowbar after their attempt to obtain a hand saw was unsuccessful, and she described reaching her hand into the ATM after Cordray had opened it with a crowbar. Trotter and Dugas had testified that Cordray was driving the vehicle that Trotter stopped, and during the traffic stop, Trotter observed twenty-dollar bills in Cordray's vehicle, and he recovered clothing that matched what the male suspect was wearing in the surveillance video. In

14

addition, the jury heard testimony that the officers saw a crowbar in Cordray's truck. Given the strong evidence of Cordray's guilt, we resolve the third *Ramon* factor in favor of the trial court's decision to deny the motion for mistrial. *See id*. For all these reasons, we overrule issue three. Having overruled each of Cordray's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on January 26, 2021
Opinion Delivered February 17, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.