

# NUMBER 13-19-00562-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LATOYA AMADOR,                                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                         **Appellee.**

## On appeal from the 156th District Court
## of Bee County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Hinojosa**

Appellant Latoya Amador appeals her conviction for delivery of a controlled substance in penalty group one, in an amount of four grams or more but less than 200 grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). A jury found Amador guilty and assessed punishment at twenty-five years' imprisonment. In eight issues, which we reorder, Amador argues: (1) there is legally insufficient evidence

supporting her conviction; the trial court erred in overruling Amador's objections to (2) testimony defining the term "reup," (3) testimony describing events captured by video, and (4) the admission of video footage of Amador's behavior during transport to the courthouse; (5) the trial court erred in referencing another pending criminal charge; (6) the trial court abused its discretion in denying Amador's motion for a mistrial; (7) her punishment was unconstitutional; and (8) she received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

A grand jury returned an indictment charging Amador with knowingly delivering, by actual transfer, methamphetamine in an amount of four grams or more but less than 200 grams to Hilliary McCallister. *See id.*

### A. Guilt/Innocence Trial

At trial, McCallister testified that he approached John Landreth, an investigator with the Bee County District Attorney's Office, about reducing pending drug charges against McCallister's uncle. McCallister signed a confidential informant agreement, which provided that he "will be working towards consideration on [his uncle's] charges[.]" Landreth asked McCallister, a past user of methamphetamine, if he could covertly record drug transactions with individuals who previously supplied him with the drug. McCallister identified multiple individuals, including Amador.

According to McCallister, Landreth provided him with $200 and a camera, which McCallister placed above the door inside a shed on his parent's property in Beeville, Texas. McCallister contacted Amador to purchase a half ounce, or approximately fourteen

2

grams, of methamphetamine. According to McCallister, Amador "needed a ride to go pick it up so she could sell me what I was asking for." He also recalled Amador saying she needed to "reup." He picked up Amador from her residence and drove her to a house in Mathis, Texas. Amador went inside the house with the $200, while McCallister remained in the vehicle. Amador returned two minutes later, and McCallister then drove to his parent's property, where he and Amador entered the shed. Once inside, Amador pulled the methamphetamine out of her purse, used a scale to measure a half ounce, provided McCallister with the requested amount, and returned what was left to her purse. McCallister then took Amador home. He later met with Landreth and turned over the camera and methamphetamine. Over Amador's objection, McCallister testified that the term "reup" meant "[t]o purchase more drugs to sell."

The trial court admitted the video recording from inside the shed, which generally depicts the transaction as described by McCallister. Additionally, Amador can be heard on the video stating "I don't smoke it" referring to methamphetamine. When weighing the drug she says, "I always weigh over" and "I don't want to short."

Landreth testified that McCallister came into the District Attorney's Office "request[ing] to do something that would help" his uncle. Landreth told McCallister that "it would take some major drug dealers" because McCallister's uncle was "looking at twenty-five years[.]" McCallister provided a list of names to Landreth. With respect to Amador, they planned to "set up a purchase contact to see how much she wanted for a half ounce of meth[amphetamine]." Landreth provided McCallister with $200 from the office's asset seizure fund. After the deal was completed, Landreth went to McCallister's property and

3

retrieved the camera and the methamphetamine. Landreth testified that he sent the methamphetamine to the Texas Department of Public Safety (DPS) laboratory for testing. Landreth stated that McCallister also purchased drugs as an informant from other individuals. On cross-examination, Landreth testified that he only recovered 10.47 grams from McCallister as opposed to the negotiated amount of fourteen grams. Landreth stated that it is common for drug dealers to short buyers on the amount. On redirect, over Amador's objection, Landreth testified that he witnessed a "transfer" when viewing the video taken inside the shed. He elaborated, "I see a plastic baggie with a clear-looking substance taken out of the purse" by Amador. "She then breaks it out. A small bowl was placed on a scale. She weighs whatever she weighed out." According to Landreth, Amador "then weighs out the remaining substance and ties it up and puts that back in her purse."

Chandler Ferguson, a forensic scientist with the DPS crime lab, testified that the weight of the substance submitted for testing was 10.47 grams and that testing confirmed the substance to be methamphetamine.

The jury found Amador guilty, and the case proceeded to a punishment hearing.

**B.      Punishment Hearing**

At the commencement of the punishment hearing, but outside the presence of the jury, the trial court announced the following:

> For the purposes of the record, the Court was informed at 7:00 this morning that the defendant had no wish to be present in court today. The Court did go ahead and order her present, and she is in the courthouse, but is very disruptive and in fact could be considered dangerous.

Amador's counsel then moved for a continuance, representing that Amador was troubled,

4

upset, and traumatized by the jury's verdict. Amador's counsel believed that she was experiencing "a genuine type of reaction" to a guilty verdict. Amador's counsel stated that a continuance would allow him to prepare her to be present for the punishment trial. The trial court continued the punishment hearing to 1:30 p.m. that day.

When the hearing reconvened that afternoon, Amador was not present. Amador's counsel moved for a mistrial based on his review of body cam video from the officers who transported Amador from the jail to the courthouse that morning. Amador's counsel represented that he "would like to take time to evaluate [Amador] regarding her competency[.]" Amador's counsel also stated that one of the jurors witnessed Amador's behavior that morning. The State responded that the referenced video would be offered at the punishment hearing and that it depicts Amador making threats against the judge. The trial court denied Amador's motion for mistrial and stated on the record: "that by [Amador's] behavior, that behavior being purely voluntary, and in fact all efforts being made to remedy and correct that behavior, has voluntarily removed herself from these proceedings." The proceedings then resumed in Amador's absence.

As part of its punishment evidence, the State moved to admit the body cam video depicting Amador's behavior that morning. Amador's counsel objected as follows: "The defense would object to the admission of this evidence at this time based on our earlier discussions on the record with regards to the comments of the defendant in conjunction with the sentencing hearing, her mental state of mind." The trial court overruled the objection, and the video was played to the jury.

The video depicts Amador refusing to go to court while at the jail and physically

resisting the sheriff's deputies' efforts to transport her. Despite her resistance, the deputies were able to transport Amador to the courthouse where she continued to refuse to go to court. Amador claims on the video that she was falsely accused, and she makes various threats. She can be heard telling the officers, "Y'all want to see a f-cking murder, I'll show y'all a f-cking murder." When arriving at the courthouse, she says, "If she's dead, y'all know why." Later at the courthouse, while facing the direction of the courtroom, Amador says, "My mom should have put a gun in there and killed her bitch ass." The case was submitted to the jury, which assessed punishment at twenty-five years' imprisonment. At a later sentencing hearing, which Amador attended, the trial court imposed the sentence assessed by the jury. Amador filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## II.    LEGAL SUFFICIENCY

In her first issue, Amador argues there was legally insufficient evidence establishing the offense of delivery of a controlled substance. In particular, Amador argues there is insufficient evidence (1) of the delivery element, (2) corroborating the informant's testimony, and (3) of venue in Bee County.

### A.    Standard of Review & Applicable Law

In determining the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim.

6

App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. "[A] person commits an offense if [she] knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance," such as methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). The offense is a first-degree felony "if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams." *Id.* § 481.112(d).

## B. Delivery

We first address Amador's argument that there is legally insufficient evidence that Amador delivered the methamphetamine to McCallister. Amador argues that the evidence shows that she and McCallister jointly purchased methamphetamine for personal use.

The indictment alleged that Amador knowingly delivered, by actual transfer, methamphetamine. "Deliver" means "to transfer, actually or constructively, to another a

7

controlled substance[.]" *Id.* § 481.002(8). "[A]n 'actual transfer' occurs when the defendant transfers actual possession and control of a controlled substance to another person." *Thomas v. State*, 832 S.W.2d 47, 51 (Tex. Crim. App. 1992).

Here, there was direct evidence in the form of McCallister's testimony and video footage that Amador transferred possession of the methamphetamine to McCallister when she removed it from her purse, weighed the appropriate amount, and handed it to McCallister. Further, McCallister testified that Amador agreed to sell him a half ounce of methamphetamine for $200, but that Amador needed to "reup" or "purchase more drugs to sell" first. Viewing this evidence in the light most favorable to the judgment, we conclude that a rational finder of fact could have found beyond a reasonable doubt that Amador delivered the methamphetamine to McCallister. *See Whatley*, 445 S.W.3d at 166.

## C.    Corroborating Evidence

Next, Amador argues that there was no evidence corroborating McCallister's testimony. Particularly, Amador argues that there was no corroborating evidence that "this was a delivery case instead of a possession case."

Article 38.141 of the Code of Criminal Procedure provides,

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM PROC. ANN. art. 38.141(a). "The corroboration requirement [for informant testimony] is similar to the corroboration required of an accomplice witness, and the same standard of review applies for each." *Padilla v. State*, 462 S.W.3d 117, 125 (Tex. App.—

8

Houston [1st Dist.] 2015, pet. ref'd) (citing *Malone v. State*, 253 S.W.3d 253, 257–58 (Tex. Crim. App. 2008)). "When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we 'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.'" *Malone*, 253 S.W.3d at 257 (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). We view corroborating evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). "[T]he corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Malone*, 253 S.W.3d at 257. Instead, the evidence must "link the accused in some way to the commission of the crime." *Id.* "The corroboration requirement . . . does not apply separately to each element of the offense charged or to each aspect of the accomplice's testimony." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016).

Removing McCallister's testimony from consideration, we find sufficient evidence connecting Amador to the commission of the offense. The video footage depicts Amador removing a substance—later confirmed to be methamphetamine—from her purse, weighing the drug, and then providing it to McCallister. *See Cook v. State*, 460 S.W.3d 703, 710 (Tex. App.—Eastland 2015 no pet.) ("The fact that [the confidential informant] served as the sponsoring witness for the video exhibit does not preclude it from serving as corroborating evidence because the jury was able to watch the video and make its own determination regarding the images depicted in the video."). Amador can be heard making various statements that characterize this interaction as a drug sale, including "I

9

don't smoke it," "I always weigh over," and "I don't want to short." This evidence independently connects Amador with the commission of a crime. *See Malone*, 253 S.W.3d at 257. And even though the evidence need not corroborate each element of the charged offense, we observe that the video corroborates McCallister's testimony that Amador was delivering drugs to him as opposed to the two jointly possessing the drugs. *See Ambrose*, 487 S.W.3d at 598.

**D.    Venue**

Finally, Amador argues that there is legally insufficient evidence that Amador committed the offense in Bee County.

Under Texas law, venue is not an element of the offense and need not be established beyond a reasonable doubt. *See Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). Rather, "[t]o sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." TEX. CODE CRIM. PROC. ANN. art. 13.17. We view all the evidence in the light most favorable to an affirmative venue finding and determine whether a rational trier of fact could have found by a preponderance of the evidence that venue was proper. *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd); *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Amador argues that the delivery of methamphetamine occurred in San Patricio County when Amador "walked back to McCallister's car from the drug house and reentered his car[.]" We disagree. Viewed in the light most favorable to an affirmative

venue finding, the evidence establishes that Amador obtained methamphetamine from her supplier in San Patricio County, but she did not deliver the drugs to McCallister as alleged in the indictment until the two arrived at the property in Bee County. *See Thomas*, 832 S.W.2d at 51 ("[A]n 'actual transfer' occurs when the defendant transfers actual possession and control of a controlled substance to another person."). Accordingly, we conclude that the State established venue in Bee County by a preponderance of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17; *Dewalt*, 307 S.W.3d at 457; *Gabriel*, 290 S.W.3d at 435.

### E. Summary

Having rejected each of Amador's sufficiency arguments, we overrule her first issue.

### III. EVIDENTIARY RULINGS

In her second through fifth issues, Amador argues that the trial court abused its discretion in making various evidentiary rulings. We conclude that Amador has failed to preserve these issues for appellate review.

Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection, or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to

11

rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id*. at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Furthermore, a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

In her second issue, Amador argues that the trial court erred in allowing McCallister to define the term "reup." At trial, Amador objected that such testimony was not material to the case because it was "beyond the scope of what actually happened." On appeal, Amador argues that such testimony constitutes improper extraneous offense evidence and that its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b). Because Amador's appellate argument does not comport with her trial objection, this issue is unpreserved. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Wilson*, 71 S.W.3d at 349. We overrule Amador's second issue.

In her third issue, Amador argues that the trial court erred in allowing Landreth to testify that he observed a transfer of drugs when viewing the video of Amador and McCallister. Amador argues that the trial court erred in permitting the testimony because Landreth was not qualified as an expert in narcotics delivery investigations. At trial, however, Amador objected that such testimony was not relevant and that the witness did not have the "ability or competency to testify as to what he saw[.]" This objection was not

specific enough to inform the trial court that Amador believed the area of inquiry required a witness who was qualified as an expert in a particular field. Accordingly, we conclude that Amador has failed to preserve this argument. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Resendez*, 306 S.W.3d at 312.

Assuming for the sake of argument that the issue is preserved, we conclude that the trial court did not abuse its discretion in overruling the objection because Landreth's testimony was admissible as a lay opinion. *See* TEX. R. EVID. 701. "[Texas] Rule [of Evidence] 701 allows a lay witness to give testimony in the form of opinions or inferences that are rationally based on the witness' perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) (citing TEX. R. EVID. 701). "As a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions[.]" *Id.* at 537. "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.* Landreth testified that he viewed the video, and his testimony that he observed a transfer of narcotics was rationally based on his perception of what occurred. *See id.* at 538. Therefore, the trial court did not abuse its discretion in implicitly concluding that Landreth's testimony was permissible under Rule 701. *See id.* We overrule Amador's third issue.

In her fourth issue, Amador argues that the trial court erred in overruling her objections to the admission of body cam video depicting Amador's behavior while she

13

was being transported from the jail to the courthouse. Specifically, Amador maintains that the evidence should have been excluded under Texas Rule of Evidence 403 because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. However, Amador did not object on this basis in the trial court. Therefore, she has failed to preserve the argument for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Resendez*, 306 S.W.3d at 312. We overrule Amador's fourth issue.

In her fifth issue, Amador argues that the trial court erred in informing the jury panel that Amador "had two criminal cases pending[.]" At the beginning of jury selection, the trial court announced the following: "All right. Then, ladies and gentlemen, I want to tell you a little bit about the cases that are going to be heard today. The Court has called Causes B-19-2045 and B-19-2046, the State of Texas vs. Latoya Amador." The trial court then proceeded to describe the charge in cause number B-19-2045, which is the subject of this appeal. Before the trial court described the second charge, the following colloquy occurred:

[Defense Counsel]: Your Honor—

[Prosecutor]: Your Honor, may we approach?

[Defense Counsel]: —we need to object.

THE COURT: Yes.

[Prosecutor]: I think that you are inadvertently telling them that she has extra charges, which could violate 404(b) motions in limine. They are not supposed to know she has extra charges.

THE COURT: Okay. So we are not going on this one?

[Prosecutor]: We are only going forward on one. They are two

14

separate dates.

THE COURT:    Okay. All right.

When Amador raised her objection, the trial court afforded her the relief she requested and did not further reference the other charge. Amador requested no further relief such as a curative instruction or a mistrial. By not asking for further relief, Amador has not preserved this issue for review. *See Ryder v. State*, 581 S.W.3d 439, 451 n.5 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Because Appellant received all the relief he requested, he did not preserve this issue for appellate review."); *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Failure to request further relief after an objection is sustained preserves nothing for review."). We overrule Amador's fifth issue.

## IV.    MISTRIAL

In her sixth issue, Amador argues that the trial court erred in denying her motion for a mistrial. Amador argues that the trial court should have granted the motion because of issues concerning Amador's competency to stand trial, the fact that a juror witnessed her behavior in the courthouse, and Amador's inability to be present for the hearing.

## A.    Standard of Review

We review the denial of a motion for mistrial for an abuse of discretion. *Ocon v. State,* 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). When deciding whether the trial court abused its discretion, we examine the particular facts of the case. *Green v. State*, 554 S.W.3d 785, 790 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "A mistrial is an appropriate remedy in 'extreme

15

circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon*, 284 S.W.3d at 884 (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc)).

**B.  Analysis**

First, Amador argues that the trial court erred in denying her motion for mistrial because her refusal to attend the punishment hearing raised issues concerning her competency to stand trial.[1]

"[D]isruptive courtroom conduct and a general failure to cooperate are not probative of incompetence to stand trial." *George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999). "If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Moore*, 999 S.W.2d at 395; *see George*, 446 S.W.3d at 501; *see also Duong v. State*, No. 02-18-00128-CR, 2019 WL 3334426, at *7 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication) (finding that the trial court could have reasonably concluded that it was facing a disruptive but competent defendant intent on stopping the trial and therefore the trial court did not abuse it discretion by failing to conduct a competency hearing); *White v. State*, No. 02-12-00087-CR, 2013 WL 4210827, at *8 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (holding that the defendant's refusal to return to the courtroom may have been disruptive but was not

---

[1] Although Amador based her motion for mistrial in part on suggestions that she may be incompetent to stand trial, she does not raise a separate issue complaining of the trial court's failure to hold a competency hearing.

16

probative of incompetence); *DeWitt v. State*, No. 05-12-00583-CR, 2013 WL 3389055, at *2 (Tex. App.—Dallas July 3, 2013, no pet.) (mem. op., not designated for publication) (concluding that a defendant's failure to communicate with counsel did not demonstrate an inability to communicate as required to show incompetency). Here, Amador relies solely on her own disruptive conduct and refusal to attend the punishment hearing as suggesting her incompetence to stand trial. However, this evidence is not probative of incompetence. *See Moore*, 999 S.W.2d at 395; *George*, 446 S.W.3d at 501. Accordingly, we conclude that the trial court did not abuse its discretion in denying Amador's motion for mistrial on this basis. *See Ocon*, 284 S.W.3d at 884.

Next, Amador argues that the trial court should have granted a mistrial based on her counsel's representation that a juror may have witnessed her disruptive conduct in the courthouse. Amador's argument in this regard is limited to the following: "The trial court did not make inquiries of the juror in order to determine prejudice." This conclusory statement is not supported by further argument or authority. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Therefore, we conclude Amador has waived this argument through inadequate briefing. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (overruling points of error as inadequately briefed when appellant neglected to present argument and authorities as required by Texas Rule of Appellate Procedure 38.1(i)).

Finally, Amador argues that the trial court erred in denying her motion for mistrial because Amador was not present for the punishment hearing. We construe this argument

as maintaining that the trial court erred in determining that Amador's absence from the proceeding was voluntary. A criminal defendant has a constitutional and statutory right to be present at all stages of a trial for a felony offense. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03; *Routier v. State*, 112 S.W.3d 554, 575–77 (Tex. Crim. App. 2003) (noting that a defendant's constitutional and statutory rights to be present during trial). A defendant may waive this right if she voluntarily absents herself from the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03; *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985). We review a trial court's ruling in this regard under an abuse of discretion standard. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984); *see also Escobedo v. State*, No. 14-20-00219-CR, 2021 WL 3575941, at *4 (Tex. App.—Houston [14th Dist.] Aug. 12, 2021, no pet.) (mem. op., not designated for publication). "The voluntariness of a defendant's absence is generally judged in hindsight on appeal and an appellate court will not disturb the trial court's finding that a defendant voluntarily absented himself from the trial court proceedings when the defendant fails to put on any evidence to refute that determination." *Simon v. State*, 554 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Kline v. State*, 737 S.W.2d 895, 900 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd)).

Here, the record demonstrates that Amador refused to be transported to the courthouse the morning of her punishment hearing. She expressly stated to transporting officers that she was refusing to attend the hearing, she physically resisted the officers' efforts to transport her, and she made threatening comments. Amador presented no contrary evidence. On this record, we conclude that the trial court did not abuse its

18

discretion in determining that Amador had voluntarily absented herself from the proceeding. *See Moore*, 670 S.W.2d at 261. Having rejected each of Amador's arguments concerning the trial court's denial of her motion for a mistrial, we overrule her sixth issue.

## V. CRUEL & UNUSUAL PUNISHMENT

In her seventh issue, Amador argues that her sentence constituted cruel and unusual punishment in violation of the United States and Texas Constitutions. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13.

### A. Applicable Law

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); TEX. CONST. art. I, § 13 (prohibiting "cruel or unusual punishment"). A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.— Corpus Christi–Edinburg 2005, pet. ref'd) (providing that a sentence is unlikely to be disturbed on appeal if it is assessed within the legislatively determined range).

To preserve for appellate review a complaint that a sentence constitutes cruel and unusual punishment, a defendant must present to the trial court a timely request,

19

objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Navarro v. State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (holding that to preserve a disproportionate-sentencing complaint, the defendant must make a timely, specific objection in the trial court or raise the issue in a motion for new trial); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (same).

## B.     Analysis

Amador did not object in the trial court that her sentence was disproportionate to the offense charged or in violation of her constitutional rights. Furthermore, Amador's twenty-five year sentence falls within the statutory prescribed punishment range for first-degree felonies. *See* TEX. PENAL CODE ANN. § 12.32(a) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years."). Accordingly, we hold that Amador failed to preserve this complaint for our review. *See Smith*, 721 S.W.2d at 855; *Trevino*, 174 S.W.3d at 927–28 ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection."). We overrule Amador's seventh issue.

## VI.     INEFFECTIVE ASSISTANCE OF COUNSEL

In her eighth issue, Amador argues that she received ineffective assistance of

counsel.

## A.    Standard of Review & Applicable Law

The right to counsel afforded by the United States and Texas Constitutions requires more than the presence of a lawyer; "it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. To prevail on an ineffective assistance of counsel claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez*, 343 S.W.3d at 142. "Unless [an] appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez*, 343 S.W.3d at 142. To satisfy the first prong, an appellant must prove by a preponderance of the evidence that her counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, an appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

"In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.*; *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly founded in the record[.]"). Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, the record in such a case often will be insufficient to overcome the

21

presumption that counsel's conduct was reasonable and professional. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008); *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Where, as here, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Under this procedural posture, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Washington*, 417 S.W.3d at 724.

**B.    Analysis**

First, Amador argues her counsel was ineffective for not moving to strike the trial court's reference to another cause number and for not moving for a mistrial. As noted above, when the trial court called the case at the commencement of jury selection, it referenced two cause numbers. The trial court described the charges for the cause pertaining to this appeal, but before it described the second charge, Amador's counsel requested to approach the bench. At that time, the parties informed the trial court that they were only proceeding on one charge. The trial court made no further mention of or reference to the second charge.

Without a proper evidentiary record, we will not conclude that counsel's performance was constitutionally deficient if any strategic motivations can be imagined for the challenged conduct. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We note that counsel may have decided not to ask for a curative instruction to

22

avoid placing additional attention on the second charge—a reasonably sound strategic motivation. *See Ex parte Bryant*, 448 S.W.3d 29, 41 (Tex. Crim. App. 2014); *Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that counsel "may have . . . decided to withhold objections to avoid drawing unwanted attention to a particular issue, or to prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence"). Further, we do not believe that the trial court's brief reference to a separate cause number, without further elaboration, warrants the extreme remedy of a mistrial. *See Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (explaining that a mistrial is not generally warranted by an inadvertent reference to an extraneous offense). As such, we cannot conclude that Amador's counsel was ineffective for failing to raise such a motion. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (explaining that counsel is not required to engage in the filing of futile motions); *Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009, no pet.) ("[I]t is not ineffective assistance for counsel to forego making frivolous arguments and objections.").

Amador also argues that her counsel was ineffective for neither moving to strike nor requesting a mistrial regarding McCallister's testimony defining the term "reup." We note that Amador's counsel did object to this testimony, but the objection was overruled. On appeal, Amador provides no argument supporting her contention that after having his objection overruled, trial counsel should have requested further relief. Therefore, the contention is waived through inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Cardenas*,

23

30 S.W.3d at 393.

Next, Amador argues that her counsel was ineffective for failing to move for a directed verdict. Because we have already concluded that the evidence is legally sufficient to support the jury's guilty verdict, we necessarily conclude that trial counsel was not ineffective for failing to move for a directed verdict. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (holding that a challenge to a trial court's ruling on a directed verdict motion is a challenge to the sufficiency of the evidence to support conviction); *Mooney*, 817 S.W.2d at 698; *see also Carreon v. State*, No. 04-18-00415-CR, 2019 WL 3805507, at *4 (Tex. App.—San Antonio Aug. 14, 2019, no pet.) (mem. op., not designated for publication) (holding, after determining that the conviction was supported by sufficient evidence, that trial counsel was not deficient for failing to request a directed verdict); *Zarnfaller v. State*, No. 01-15-00881-CR, 2018 WL 3625618, at *20 (Tex. App.—Houston [1st Dist.] July 31, 2018, no pet.) (mem. op., not designated for publication) (same).

Amador further argues her counsel was ineffective for failing to object that her sentence constituted cruel and unusual punishment. To demonstrate ineffective assistance for failing to object, an appellant must show that if her counsel had objected the trial court would have erred in overruling the objection and that such error was harmful. *Jacoby v. State*, 227 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). As discussed above, a sentence assessed within the statutory limits is generally not cruel and unusual punishment. *See Trevino*, 174 S.W.3d at 928. The trial court sentenced Amador to twenty-five years' imprisonment in accordance with the jury's assessment of

24

punishment. A person convicted of a first-degree felony is subject to a prison term "for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE ANN. § 12.32(a). Because Amador's sentence was within the statutory limits, her counsel's failure to object does not constitute ineffective assistance of counsel. *See Gavin v. State*, 404 S.W.3d 597, 606–07 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that the sentence was within statutory limits and therefore counsel was not ineffective for failing to object); *Jagaroo v. State*, 180 S.W.3d 793, 801 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (same).

Finally, Amador argues that her counsel's cumulative errors deprived her of her right to effective assistance of counsel. However, we have rejected Amador's contentions that her counsel was ineffective; therefore, this argument necessarily fails.

We conclude that Amador failed to meet her burden under the first prong of *Strickland*. Accordingly, we need not consider the requirements of the second prong. *See Lopez*, 343 S.W.3d at 144. We overrule Amador's eighth issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
23rd day of November, 2021.

25